UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNICE S., <br>         Plaintiff, <br> v. <br> NANCY A. BERRYHILL, Acting Commissioner of Social Security <br>         Defendant. | No. CV 17-8688-AGR <br><br> MEMORANDUM OPINION AND ORDER |

Plaintiff[1] filed this action on December 1, 2017. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 9, 10.) On August 1, 2018, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court reverses the decision of the Commissioner and remands for reconsideration of a closed period of disability during the period October 17, 2013 through January 15, 2015.

---

[1] Plaintiff's name has been partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

I.

## PROCEDURAL BACKGROUND

On May 2, 2014, Plaintiff filed an application for disability insurance benefits and alleged an onset date of October 17, 2013. Administrative Record ("AR") 20. The application was denied initially and upon reconsideration. AR 20, 94, 107. Plaintiff requested a hearing before an Administrative Law Judge (ALJ). On February 17, 2016, the ALJ conducted a hearing at which Plaintiff and a vocational expert ("VE") testified. AR 36-82. On May 5, 2016, the ALJ issued a decision denying benefits. AR 17-40. On October 2, 2017, the Appeals Council denied the request for review. AR 1-5. This action followed.

II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.
# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation omitted).

## B. The ALJ's Findings

The ALJ found that Plaintiff meets the insured status requirements through December 31, 2018. AR 22. Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[2] the ALJ found that Plaintiff has the severe impairments of anxiety and mood disorder. AR 22. Plaintiff has the residual functional capacity ("RFC") to perform work at all exertional levels except that she is unable to perform high stress jobs; limited to simple, repetitive tasks; and limited to work activity requiring no more than frequent interactions with supervisors and no more than occasional interactions with coworkers and the general public. AR 25.

Plaintiff is unable to perform any past relevant work but there are jobs that exist in significant numbers in the national economy that she can perform such as hand packager, dishwasher and industrial cleaner. AR 30-31.

---

[2] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

## C. Residual Functional Capacity

The RFC determination measures the claimant's capacity to engage in basic work activities. *Bowen v. City of New York*, 476 U.S. 467, 471 (1986). The RFC is a determination of "the most [an individual] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). The ALJ assess a claimant's RFC "'based on all the relevant medical and other evidence' in the claimant's record." *Treichler v. Comm'r*, 775 F.3d 1090, 1097 (9th Cir. 2014) (quoting 20 C.F.R. § 404.1520(e)). It is an administrative finding, not a medical opinion. 20 C.F.R. § 404.1527(e)(2). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation omitted).

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). To reject an uncontradicted opinion of a treating physician, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations and quotation marks omitted).

An examining physician's opinion constitutes substantial evidence when, as here, it is based on independent clinical findings. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

The ALJ found that Plaintiff was unable to perform high stress jobs; was limited to simple, repetitive tasks; and was limited to work activity requiring no more than frequent

interactions with supervisors and no more than occasional interactions with coworkers and the general public. AR 25.

The ALJ gave significant weight to the opinion of the examining psychiatrist, Dr. Kanof on February 6, 2016. AR 27, 29. Dr. Kanof noted intermittent periods of depression during a 10-year time frame, and four psychiatric hospitalizations for medication overdoses during episodes of depression. AR 639. Plaintiff reported her activities of daily living were not limited. She took her children to school, did housework, watched TV and cooked. On examination, her eye contact was good, her speech was normal and her affect was euthymic. Her thought process was linear and focused, with no evidence of disorder. She was not delusional. She worried about her psychiatric condition, forgetfulness during episodes of depression and her ability to raise her three children. She remembered two out of three objects after five minutes, had difficulty doing serial 7s and spelled world backwards incorrectly. AR 640.

Dr. Kanof diagnosed recurrent major depressive disorder, currently in relative remission and a Global Assessment of Functioning ("GAF") score of 65.[3] AR 640-41. Dr. Kanof opined that, during the past two years, Plaintiff's ability to understand, remember and perform instructions was mildly impaired; her ability to focus and concentrate was moderately impaired; her ability to interact with the public, coworkers and supervisors was mildly impaired; her ability to comply with job rules such as safety and attendance was moderately impaired; and her ability to respond to work pressure in the usual work setting was moderately impaired. "However, her history of recurrent depressive episodes is of concern, and likely compromises her ability to participate in sustained gainful employment." AR 641. Dr. Kanof estimated that Plaintiff's GAF score was 45 during her depressive episode prior to the past two years. *Id.*

---

[3] A GAF score of 65 indicates mild symptoms, "(*e.g.*, depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR") 34 (4th ed. text rev.).

5

Plaintiff argues that the ALJ erred in failing to include Dr. Kanof's moderate impairment in her ability to focus and concentrate, and comply with job rules such as safety and attendance. The ALJ did, however, limit Plaintiff to simple, repetitive tasks that did not involve high stress. AR 25. Plaintiff does not explain why Dr. Kanof's moderate limitations would preclude her from this type of work. *Stubb-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (noting ALJ translated claimant's moderate mental and pace limitations "into the only concrete restrictions available to him – Dr. Eather's recommended restriction to 'simple tasks'"); *see also Valdez v. Berryhill*, 2018 U.S. App. LEXIS 22988, *5 (9th Cir. Aug. 17, 2018) (finding limitation to simple work was consistent with opinion that claimant's attention would wane episodically); *Lee v. Berryhill*, 721 Fed. Appx. 604, 608 (9th Cir. 2017) (finding limitation to simple, repetitive tasks accounted for moderate limitations in concentration, persistence and pace).

The ALJ also gave great weight to the opinions of the State agency review psychologists in June 2014 and February 2015, the period covered by Dr. Kanof. AR 29. Plaintiff was not significantly limited in her ability to carry out short and simple instructions; make simple work-related decisions; sustain an ordinary routine without special supervision; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; and complete a normal workday and workweek without interruptions from psychologically based symptoms. Plaintiff was moderately limited in her ability to carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with others without being distracted or distracting them; interact appropriately with the public; and accept instructions and respond appropriately to supervisors. She could accept non-confrontational supervision. AR 90-91, 103-04. Plaintiff argues that the ALJ did not incorporate Dr. Zukowsky's opinion that Plaintiff could interact appropriately with coworkers or the public "only on a brief or very casual basis. Routine, frequent, or detailed public contact is precluded." AR 91. The ALJ, however, limited Plaintiff to no more than occasional interaction with coworkers or the public. AR 25. The term

6

"occasionally" is defined as "occurring from very little up to one-third of the time." Social Security Ruling (SSR) 83-10, 1983 SSR LEXIS 30, *13 (Jan. 1, 1983). The ALJ's hypothetical to the vocational expert incorporated the preclusion from routine, regular or frequent interaction with the public. AR 76. Plaintiff has not shown error.

Plaintiff alleged disability with an onset date of October 17, 2013, which begins before the two-year period covered by Dr. Kanof's opinion. AR 20.

The ALJ stated he reviewed the record to determine whether there was "any continuous period of twelve months or more, since the alleged disability onset date," during which Plaintiff was disabled. The ALJ did not find any such period. AR 30. Plaintiff argues that the ALJ erred in discounting the opinions of her treating psychiatrist, Dr. Simonds. The ALJ discounted Dr. Simonds' opinions as inconsistent with his own records. Dr. Simonds' records "fail to reveal the type of significant clinical abnormalities one would expect if the claimant were in fact disabled" as he opined. AR 29.

The ALJ's conclusion that Dr. Simonds' medical records did not support his limitations is amply supported by substantial evidence for the period beginning February 1, 2015. Beginning in February 2015, Plaintiff reported feeling fairly stable and, for the most part, had not experienced severe anger outbursts or mood swings. Her energy was a little low but she was able to get things done around the house. AR 571. Her mood was euthymic, her insight was appropriate and her memory was intact. AR 572. Her GAF was 70-90.[4] AR 573. In March 2015, Plaintiff reported feeling stable without any severe mood swings, anger outbursts, panic attacks or severe depression. AR 568. Her mood was euthymic and her memory was intact. AR 569. Her GAF was 70-90. AR 570. In June 2015, Plaintiff reported feeling much more stable. AR 565. Her mood was euthymic. AR 566. Her GAF was 70-90. AR 567. In July 2015, Plaintiff reported taking at least three tablets of hydrocodone per day to "calm her nerves." Her

---

[4] A GAF of 70 indicates mild symptoms. See supra n.3. A GAF of 71-80 indicates that symptoms are transient and expectable reactions to psychosocial stressors. A GAF of 81-90 indicates minimal symptoms. DSM-IV-TR 34.

7

husband has destroyed the supply, and Plaintiff was a little disappointed in him but admitted that things were starting to get out of control. AR 562. She interacted warmly but had a constricted affect and irritable mood. AR 563. Her GAF was 60-70. Dr. Simonds discussed rehabilitation if she was unable to stay off the narcotic. AR 564. On September 18, 2015, Plaintiff felt relatively stable overall and was not experiencing any severe anger, depression, mood swings or panic attacks. She felt fatigued at times. AR 706. She was well groomed with normal speech, her mood was anxious, her affect was constricted, her thought content was suspicious but not delusional, her insight and judgment were limited, and her memory was selective. Her GAF score was 60-70. AR 708.

Despite these medical records, in October 2015 Dr. Simonds opined that Plaintiff was completely unable to work. She was easily angered, was often depressed and anxious, and had low frustration tolerance. AR 583. He assessed a GAF of 50. AR 585. She was moderately limited in her ability to understand, carry out and remember instructions; perform work where her contact with others would be minimal; and perform tasks involving minimal intellectual effort. Plaintiff had moderately severe impairment in her ability to respond appropriately to supervision; perform work requiring regular contact with others; perform intellectually complex tasks; perform repetitive or varied tasks; and supervise or manage others. AR 586. Subsequently, in February 2016, Dr. Simonds stated that Plaintiff was reevaluated for the first time since November 2015. AR 644. Dr. Simonds opined that Plaintiff did not have the capacity to return to full time work. He diagnosed bipolar depressed, borderline with recent ileus surgery.[5] AR 644. Her restrictions and limitations were "poor peer relations, easily agitated, low energy, distractible" and "poor frustration tolerance." The ALJ properly discounted Dr. Simonds' opinions during this period.

---

[5] Plaintiff had surgery for small bowel obstruction in November 2015. She also had severe iron deficiency and received a blood transfusion. AR 612.

The question remains whether there was any continuous period of twelve months or more, since the alleged disability onset date, during which the medical records supported Dr. Simonds' opinions. Dr. Simonds prepared a mental residual functional capacity questionnaire dated July 10, 2014. AR 407-09. Dr. Simonds opined that Plaintiff was not significantly limited in her ability to understand/remember short and simple instructions; ask simple questions or request assistance; and be aware of normal hazards and take appropriate precautions. Her ability to carry out short and simple instructions, and remember locations and work-like procedures, was somewhere between not significantly limited and moderately limited. She was moderately limited in her ability to understand/remember/carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; make simple work-related decisions; interact appropriately with the general public; and maintain socially appropriate behavior. However, she had more than moderate but less than marked limitations in her ability to accept instructions and respond appropriate to criticism from supervisors; get along with coworkers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. She had marked limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and her ability to work in coordination with or proximity to others without being distracted by them. She also had marked limitation in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Simonds added that she had moderate to severe problems with attention most of the time, and severe mood swings at times with paranoia. AR 407-08.

Dr. Simonds' medical records support his assessment during the period October 17, 2013 through January 15, 2015 – a period of more than one year. Plaintiff's most

recent 5150 hold occurred on April 4, 2013.[6] AR 398. Plaintiff admitted suicidal thoughts. She drank alcohol, took extra medication and made verbal threats to family that she wanted to overdose and end things. AR 393. She was admitted for inpatient psychiatric care. AR 398. On examination, Plaintiff did not appear to be psychotic. She was anxious, depressed and upset about her husband's relationship that may be developing into an affair with another woman who was also married. Plaintiff's memory and concentration were okay. Plaintiff was diagnosed with a major depressive disorder, recurrent. AR 382. Her Global Assessment of Functioning (GAF) score was 30.[7] AR 383. The next day, she met with a social worker and her husband. She had no psychosis, delusions or thought disorder, and was not suicidal. She participated in unit activities. AR 379. Plaintiff was discharged on April 7, 2013 feeling less depressed, less anxious and better able to function. She was diagnosed with major depressive disorder, recurrent, severe. Her GAF was 45.[8] AR 368.

Plaintiff, who was a certified nurse assistant, testified that she stopped working at the hospital on October 17, 2013, the alleged onset date.[9] AR 44-45. On November 4, 2013, Plaintiff's husband reported that she was considerably improved, but Plaintiff felt

---

[6] Plaintiff had been hospitalized seven years earlier. AR 381.

[7] Because Plaintiff was not suffering from delusions or hallucinations, a GAF score of 30 indicates serious impairment in judgment (e.g., suicidal preoccupation). DSM-IV-TR 34 (4th ed. 2000).

[8] A GAF of 41-50 indicates serious symptoms "(e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.*

[9] Plaintiff testified she stopped working because she had too many memory problems keeping track of room numbers, patient requests, etc. She had tried different medications to reduce these side effects to no avail. AR 47-48. She conceded that part of the reason she tried to work part time for a couple of months was to spend more time with her kids, who were active in sports and took up a lot of her time driving them to those activities. AR 56-57. The medical records indicate that, according to her husband, Plaintiff missed 1½ weeks of medications without telling her doctor. She was very anxious about her son's diagnosis of ADHD. AR 343.

only mildly to moderately improved. She was not ready to go back to work and was still reacting strongly to stresses. She wanted to increase the dosage of one of the medications. AR 336. Dr. Simonds observed a mildly anxious mood, mildly constricted affect, mildly suspicious thoughts and limited insight. AR 337. On November 20, 2013, Plaintiff reported slow and steady improvement in her moods, less agitation, and mild problems with energy, motivation and concentration. She was worried about her son starting anti-ADHD medications, but she had not had severe panic attacks in a long time. AR 333. Dr. Simonds assessed that her GAF was 50-60 and transitioned her to different medication. AR 334-35. On December 26, 2013, Plaintiff's overall anger and mood swings decreased. She felt overmedicated, anxious and not ready to go back to work. AR 330. Dr. Simonds noted an anxious, dysthymic and irritable mood, and assessed a GAF score of 50-60. AR 331-32. On January 24, 2014, Plaintiff felt her depression was under control but her anxiety was much worse. Her husband observed a significant difference once the risperidal dosage went below 0.5 mg. Plaintiff did not feel ready to return to work. AR 327. Dr. Simonds observed an anxious, irritable mood and constricted affect. Her GAF was 50-60. AR 329. On February 28, 2014, Plaintiff felt she was continuing to make progress on her moods but did not think she was ready to return to work. She thought it was difficult to manage her irritability on the job and wondered whether she was well suited to her particular job. AR 324. Dr. Simonds assessed a GAF of 60-70 and extended her disability one month to give her time to adjust to Abilify. AR 325-26. On March 24, 2014, Plaintiff reported that she did not like Abilify. She worried about returning to work and causing trouble for her supervisor and coworkers. AR 321. Her mental status examination was unchanged. Dr. Simonds assessed a GAF of 60-70 and changed her medication. AR 322-23.

In April 2014, Plaintiff reported feeling better but complained about medication side effects, some cognitive dulling and forgetting "everything." She did not feel depressed, but felt anxious about social obligations and appointments. She wondered if

she would ever be able to return to work, where interactions with staff could be very anxiety provoking at times. AR 513. Dr. Simonds noted a constricted, anxious affect and irritable mood. AR 514. Her GAF was 60-70. Her disability was extended through the end of June 2014. AR 515. In May 2014, Dr. Simonds opined that Plaintiff was fully disabled from her usual work or any other position due to inattention, mood swings and anger. Dr. Simonds anticipated that her disability would continue for 2-3 months or longer. AR 525, 527. In June 2014, Plaintiff reported that medication adjustments decreased her sedation but increased her panic attacks. Plaintiff admitted having ambivalent feelings about going back to her job, and wondered if she could ever work in a hospital again. AR 506. Her affect was constricted and anxious, and her mood was irritable. AR 507. Her GAF was 50-60. Her disability was continued for one month. AR 508. Dr. Simonds sent Plaintiff for evaluation by an intensive outpatient program at a hospital in July 2014. AR 444. On July 28, 2014, Plaintiff reported that she had overdosed on her medications three weeks earlier. AR 418, 451. She reported passive suicidal thoughts. AR 413, 451. She reported being recently diagnosed as bipolar and was having a hard time accepting her diagnosis. She was anxious, sad, irritable, isolated, forgetful and angry. She reported staying in bed a lot, having mood swings and not feeling like herself. On examination, her speech was clear and she did not have psychosis. She was anxious, her thought process was circumstantial and her cognition was intact. AR 444. Plaintiff asked about SSI. AR 445. In August 4, 2014, Plaintiff reported that she had severe anxiety and was taking her father's Xanax for the past eight days. She was counseled against taking addictive drugs such as Xanax given her tendency to use/abuse, and advised to remain medication compliant. AR 445, 447. On August 15, 2014, Plaintiff reported that she liked the day treatment program at Northridge a lot and felt less depressed. She was still experiencing fairly high levels of anxiety and felt moody and reactive. AR 494. Dr. Simonds noted a

broader range of affect than the last visit and Plaintiff was able to smile and laugh at times. Her GAF was 50-60. AR 495.

It is true that, on October 8, 2014, Plaintiff reported partial remission of her mood swings and depression. She denied severe mood swings, rage episodes or panic attacks. She felt "extremely anxious" about going back to work. AR 486. Plaintiff's affect was constricted and her mood was irritable. Her memory was intact but she had impulse control issues. Her GAF was 60-70. AR 487. Plaintiff reported feeling relatively stable on October 14, 2014. She was mildly depressed and anxious, and her motivation was a little low. She was not having any severe mood swings or anger outbursts. AR 477. Her mental status examination was normal except that her insight and judgment were limited. Her GAF was 60-70. AR 478. She complained of right foot pain after playing soccer on the weekend. AR 484. On November 17, 2014, Plaintiff reported that she felt fairly stable and less anxious, and hadn't had any severe mood swings or anger outbursts. AR 465. She was well groomed, interacted warmly and had fluent speech. Her mood was euthymic and her memory was intact. She had limited insight and judgment. AR 466.

Nevertheless, in January 2015, Plaintiff reported feeling stable except that she had suspiciousness and irritability. AR 574. Her affect was constricted and her mood was irritable. Her GAF was 50-60 with "serious symptoms." AR 575. Thus, although the issue is close, the court concludes that the ALJ's finding that Plaintiff did not show any continuous period of twelve months or more, since the alleged disability onset date, during which she was disabled is not supported by substantial evidence and remands for reconsideration of a closed period of disability during the period October 17, 2013 through January 15, 2015.

**D.     Credibility**

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v.*

*Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 26.

Second, when an ALJ concludes that a claimant is not malingering and has satisfied the first step, "the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted); *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (citation omitted). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Id.* (citation omitted).

The ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not consistent with the objective medical evidence. AR 26. Thus, "while the claimant may not have entered into a complete remission of her symptoms, the records are absent any indication that her condition continues to render her unable to sustain competitive employment." AR 28. This reason is supported by substantial evidence during the period beginning February 1, 2015 for the reasons discussed above. Although the fact that the objective medical evidence does not support the severity of the subjective allegations cannot form the sole basis for discounting testimony, "it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ also relied on Plaintiff's activities of daily living and her noncompliance with medication at times. These reasons are supported by substantial evidence. The ALJ may properly rely on activities of daily living that undermine the severity of the alleged symptoms. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). Plaintiff testified that her three children are active in sports and she is the parent largely responsible for getting them to and from their sports activities. She spends a lot of time taking care of her kids. AR 56, 65. That was one of the considerations in cutting back to part time work. AR 57. The record shows Plaintiff's noncompliance with medication at times and an increase in symptoms during those times. Plaintiff has not shown error.[10]

## IV.

## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and remanded for reconsideration of a closed period of disability during the period October 17, 2013 through January 15, 2015.

DATED: January 10, 2019

*Alicia G. Rosenberg*
ALICIA G. ROSENBERG
United States Magistrate Judge

---

[10] Even assuming the ALJ should not have considered her noncompliance because it was due to mental impairments or drug issues, any error was harmless. In any event, Plaintiff's testimony focused more on her inability to return to her past relevant work, which was consistent with the ALJ's finding. The hearing took place on February 17, 2016. AR 36, 639. Plaintiff testified that she had thought about applying for a less stressful job such as the food services department and her kids' school, but she was afraid she would not know what to do if a kid started choking or something. AR 59. Plaintiff did not know there were other jobs that would not involve work with the public, and therefore had not considered such work. AR 60-61. Plaintiff felt she could not go back to working with patients. AR 72.